UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARY JARRACH,

                    Plaintiff,

**OPINION AND ORDER
08 CV 2807 (SJF)(ARL)**

    - against-

EMMALINE SANGER, individually and in her
official capacity, STEPHEN FERRANTE, individually
and in his official capacity, and DENNIS DUBEY,
individually and in his official capacity,

                    Defendants.
------------------------------------------------------------------X
FEUERSTEIN, J.

On July 15, 2008, plaintiff Mary Jarrach ("plaintiff") filed this action against defendants

David Patterson, governor of the State of New York; the State of New York; the New York State

Office of Mental Health, Sagamore Children's Psychiatric Center; and Emmaline Sanger

("Sanger"), Stephen Ferrante ("Ferrante") and Dennis Dubey ("Dubey"), all in their individual

and official capacities, alleging employment discrimination based on disability and/or age, a

hostile work environment and retaliation in violation of, *inter alia*, the Americans with

Disabilities Act, ("ADA"), 42 U.S.C. § 12101, *et seq.*; Section 504 of the Rehabilitation Act of

1973 ("the Rehabilitation Act"), 29 U.S.C. § 792, *et seq.*; the Age Discrimination in Employment

Act, ("ADEA"), 29 U.S.C. § 621, *et seq.*; and the New York State Executive Law § 296

("NYSHRL"). On or about February 5, 2009, those defendants served plaintiff with a motion to

dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure for lack of subject matter jurisdiction and failure to state a claim, respectively.[1] Thereafter, on October 7, 2009, plaintiff filed an amended complaint against Sanger, Ferrante and Dubey (collectively, "defendants"), in their individual capacity only, alleging, *inter alia*, employment discrimination based on disability and/or age, a hostile work environment and retaliation in violation of the ADA, the Rehabilitation Act, the ADEA and/or the NYSHRL, as well as a violation of her equal protection rights pursuant to 42 U.S.C. § 1983 ("Section 1983").

Defendants now move pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim, respectively. Plaintiff has not opposed the motions, despite being granted repeated extensions of time within which to do so. (See Doc. Nos. 17, 19 and 21). For the reasons stated herein, defendants' unopposed motion to dismiss is granted.

I.    Background

    A.    Factual Allegations[2]

Plaintiff is a sixty-five (65) year old woman "with a known disability (hearing and herniated disks in back)." (Amended Complaint [Compl.], ¶ 8).

On May 15, 1997, plaintiff commenced her employment at the Sagamore Psychiatric

---

[1] Plaintiff failed to timely oppose that motion and only requested an extension of time to oppose the motion after I had granted defendants' application for leave to file the motion as unopposed. (See Doc. Nos. 7-9). Although I subsequently granted plaintiff an extension of time to oppose the motion, (Doc. No. 10), she again failed to oppose the motion. (See Doc. No. 11). Nonetheless, defendants ultimately "withdrew" their first motion to dismiss prior to filing it with the Court pursuant to my individual rules. (Doc. No. 13).

[2] The factual allegations are taken from the amended complaint and are assumed to be true for purposes of this motion only. They do not constitute findings of fact by the Court.

Center ("Sagamore"), a facility owned and operated by the New York State Office of Mental Health ("NYSOMH"), (Compl., ¶ 5), as a front desk receptionist with the title of "Keyboard Specialist 1." (Compl., ¶ 9). On or about July 22, 2005, plaintiff was promoted to the title of "Clerk 2," which was "rated at salary level 9." (Compl., ¶ 10).

Plaintiff alleges that on or about September 15, 2005, her supervisors designated on an evaluation form that her probationary period in the "Clerk 2" position was "considered successfully completed" based upon their favorable rating of her performance in that position. (Compl., ¶ 11).

Plaintiff alleges that in October 2005, she passed the test for a "Secretary 1" title, which was "rated at salary level 11." (Compl., ¶ 12). According to plaintiff, she was notified of the test results in December 2005. (Id.) Plaintiff alleges that the "Secretary 1" vacancy at Sagamore has remained vacant since November 2005 and that the position has instead been filled by an employee(s) with a "Keyboard Specialist 2" title in order to deny her the opportunity for a promotion to that position. (Compl., ¶¶ 14, 17). Plaintiff further alleges that she informed John Hamilton ("Hamilton"), from Sagamore's personnel office, that she was interested in a promotion to the "Secretary 1" vacancy since at least December 2005 and that Hamilton falsely advised her that no such positions were available at Sagamore. (Compl., ¶ 15).

Plaintiff alleges that in November 2005, she "was canvassed by the [NYSOMH] for three vacant Keyboard 2 positions at [Sagamore]," but when she requested copies of the three (3) postings, Hamilton advised her that there were only two (2) such positions available. (Compl., ¶¶ 16, 21).

Plaintiff alleges that on or about January 10, 2006, her supervisors conducted an improper

3

second evaluation of her performance, notwithstanding that they had previously indicated on the September 15, 2005 evaluation form that her probationary period had been completed, which was not as favorable to her as the prior evaluation. (Compl., ¶ 13).

Plaintiff further alleges that in January 2006, she was interviewed for one of the vacant "Keyboard 2" positions by Barbara Schnall ("Schnall"), Sagamore's program director for inpatient services. (Compl., ¶¶ 18, 19). According to plaintiff, she declined the position "as it had been posted" because she believed it was not to her advantage to accept the position at a "Keyboard 2" salary level when the employee who had previously held that position, Annette Tucci, had been employed at a higher "Secretary 1" or "Secretary 2" salary level. (Compl., ¶¶ 19, 20).

On or about March 2, 2006, plaintiff filed a step two (2) grievance appeal against the NYSOMH with respect to the second probationary evaluation, which was denied. (Compl., ¶ 22).

Plaintiff alleges that on or about March 15, 2006, Sanger directed her to perform work outside the scope of her position which involved "heavy lifting, pushing and pulling the would exceed the physical limitations of medical documentation previously submitted by [her] to her supervisors from her doctor." (Compl., ¶ 23). According to plaintiff, she informed Sanger that she was unable to perform the work due to her medical restrictions. (Id.) Plaintiff alleges that Sanger also sent her medical restriction information to Ferrante, plaintiff's immediate supervisor. (Id.)

Plaintiff alleges that on or about March 20, 2006, she met with Hamilton and Ferrante regarding her medical restrictions, at which time she was provided with a form "used by

4

employees claiming to have been injured on the job" and was directed to have her doctor complete the form so that her physical limitations and ability to perform "file purging" could be assessed. (Compl., ¶ 24). According to plaintiff, she objected to the form on the grounds that she never claimed to have been injured on the job, (Compl., ¶¶ 24, 27), and her duties as a "Clerk 2" did not require her to perform the work requested. (Compl., ¶ 27). On or about March 21, 2006, Hamilton sent plaintiff a memorandum directing her to have her doctor complete the form and return it to him by March 29, 2006. (Compl., ¶ 25). Plaintiff sent Hamilton a reply memorandum dated March 28, 2006 "questioning his rationale for requiring her to provide any further medical documentation." (Compl., ¶ 27).

Plaintiff alleges that commencing on or about March 24, 2006, and continuing thereafter, Sanger and her co-workers began speaking to her in lower tones, despite their knowledge of her "hearing problem," in retaliation for her refusal to perform the "file purging" work. (Compl., ¶¶ 26, 48).

On March 31, 2006, plaintiff was directed to report to Ferrante for a "counseling session," at which she requested union representation. (Compl., ¶ 29). During the session, Ferrante charged plaintiff with violating the NYSOMH's "Respect Policy," insofar as she was accused of yelling and screaming at her supervisor and co-workers and of "checking up" on one of her co-workers. (Id.) Plaintiff denied the allegations and complained that at least one of her co-workers was harassing her and that management had ignored her complaints of that harassment. (Id.) Plaintiff alleges that following that meeting, her co-workers ignored her and Sanger stopped notifying her when she left the office, as she had previously done. (Compl., ¶¶ 30, 33, 37).

Plaintiff alleges that on April 10, 2006, she was verbally abused by a co-worker, Janet,

without provocation, and that Sanger had witnessed the attack but reprimanded plaintiff for it. (Compl., ¶ 31). According to plaintiff, Sanger and her co-workers, including Janet, continuously "disrespect" and harass her and ignore her complaints of harassment. (Compl., ¶¶ 31, 51, 60, 62).

Plaintiff alleges that on April 13, 2006, she met with Ferrante and Sanger, at which time she was denied union representation. (Compl. ¶ 34). According to plaintiff, during that meeting she was asked to sign a document memorializing the April 10, 2006 meeting concerning the NYSOMH's "respect policy," and, although she believed there were some discrepancies in the document, she signed the document solely to acknowledge its receipt. (Id.)

Plaintiff alleges that on or about May 1, 2006, in retaliation for her complaints and grievances, her lunch break was reduced from one (1) hour to thirty (30) minutes. (Compl., ¶ 35).

On May 2, 2006, plaintiff filed two grievances based upon the April 10, 2006 counseling session and management's attempt to have her perform the "file purging" assignment, respectively. (Compl., ¶ 36). According to plaintiff, those grievances are still pending. (Id.) On that same date, plaintiff was informed by Marie Milnes ("Milnes"), Hamilton's replacement, that she was to report to Stony Brook University Hospital for a psychiatric evaluation "[a]s a result of observed behavior at work." (Compl., ¶ 38).

Plaintiff alleges that on May 6, 2006, she was evaluated by her own psychologist, Dr. Jennifer Duffy, who reported that there "was no psychological issue out of the ordinary or that would prevent [plaintiff] from performing her duties." (Compl., ¶ 39).

By letter dated May 20, 2006, Milnes advised plaintiff that the grievance she filed

regarding the "file purging" assignment was required to be brought at the second step of the grievance procedure. (Compl., ¶ 40). Plaintiff consulted with the union and arranged to file a step two (2) grievance appeal. (Id.)

On May 23, 2006, a psychiatric evaluation of plaintiff was performed at Stony Brook Hospital. (Compl., ¶ 41). By letter dated June 5, 2005, Dr. Hargraves of Stony Brook Hospital reported that plaintiff was psychologically fit for duty and was physically fit for duty except with respect to the "file purging" assignment. (Compl., ¶ 41).

Plaintiff requested medical leave from June 12, 2006 through, and including, June 16, 2006 "[i]n anticipation of undergoing medical procedures." (Compl., ¶ 45). On June 9, 2006, Sanger requested that plaintiff provide a doctor's note relating to her leave request. (Id.) Plaintiff alleges that she informed Sanger that the collective bargaining agreement ("CBA") only required medical documentation by employees absent for four (4) or more days or with an unusually high absentee record. (Id.) According to plaintiff, Sanger responded that Sagamore had a more restrictive policy, which plaintiff questioned. (Id.) Nonetheless, plaintiff submitted the requested medical documentation. (Id.)

On July 3, 2006, plaintiff filed a grievance with respect to the reduction of her lunch break, which was denied. (Compl., ¶ 42). On July 12, 2006, plaintiff notified her union that she wanted to file another grievance with respect to a memorandum from Dubey, Sagamore's executive director, regarding the reduction of her lunch break. (Compl., ¶ 43).

On or about July 19, 2006, plaintiff filed a grievance against Sanger based upon her purported "unlawful disparate treatment of Plaintiff with respect to work assignments within the office." (Compl., ¶ 44).

Plaintiff alleges that by letter dated August 22, 2006, Ferrante advised her that the doctor's note that she submitted with respect to her June 2006 medical leave was insufficient. (Compl., ¶ 46). By letter dated August 23, 2006, Ferrante rescinded his request for additional medical documentation. (Compl., ¶ 47).

Plaintiff alleges that on or about September 11, 2006, as she was walking to her desk, Sanger called her into her office. (Compl., ¶ 48). According to plaintiff, she continued to her desk, at which time Sanger called for her a second time. (Id.) When plaintiff entered Sanger's office, Sanger chastised her for having to call for her twice. (Id.) According to plaintiff, when she explained to Sanger that she had walked to her desk and characterized her delay in responding as only momentary, Sanger, with knowledge of plaintiff's hearing problem, responded: "Do you have a problem with your ears?" (Id.) Thereafter, plaintiff left Sanger's office and returned to her desk. (Id.)

Plaintiff alleges that on September 25, 2006, Ferrante informed her that she would not be receiving a new computer like everyone else had because her computer was not more than four (4) years old. (Compl., ¶ 49). According to plaintiff, she informed Ferrante that her computer was in fact more than four (4) years old. (Id.). On that same day, Sanger advised plaintiff that she was required to attend training on Microsoft Word. (Compl., ¶ 50). According to plaintiff, Sanger denied her request for permission to skip the first day of training because she was already using Word, notwithstanding that a co-worker had been granted such permission. (Id.)

Plaintiff alleges that on October 11, 2006, her right to change computer records was unilaterally revoked without any notice to her. (Compl., ¶ 52).

Plaintiff alleges that on October 16, 2006, she informed management that she was having

8

computer problems and that management ignored, and continues to ignore, her complaints of computer problems and/or initiated, and continues to initiate, such problems. (Compl., ¶¶ 53, 64-67). In addition, plaintiff alleges that she was advised by Mary Puglisi, of the IT staff, that she was required to apply for a license in order to have the Word software installed on her computer and that no other employee had to apply for such a license. (Compl., ¶ 55). Plaintiff further alleges that on that same date, she inquired of Milnes about a specific "Keyboard 2" position at the Waverly office, for which she had been canvassed in June, at which time Milnes informed her that another employee had been promoted to that position, notwithstanding that the position had never been posted. (Compl., ¶ 54). According to plaintiff, she thereafter contacted her union to file a grievance for being bypassed for the Waverly position. (Id.)

Plaintiff alleges that on October 19, 2006, Sanger advised her that she would no longer be doing census work, which had been assigned to two (2) of her co-workers, Rene and Stacy; that her office had been moved; and that her old office had been assigned to Rene. (Compl., ¶ 56). According to plaintiff, she contacted the union to request assistance in filing a grievance for having her duties improperly taken away from her. (Id.)

Plaintiff alleges that in October 20, 2006, she met with Sanger and Ferrante for her annual performance evaluation and that although her performance was rated as satisfactory, she was provided with a new job description which added to her duties "record purging" and filing and which omitted from her duties the census function she had previously performed for three (3) years. (Compl., ¶ 59).

Plaintiff alleges that on November 2, 2006, Sanger berated her for her failure to get along with her co-workers. (Compl., ¶ 61).

Plaintiff further alleges that on January 18, 2007, Sanger directed her to take lunch later than usual. (Compl., ¶ 68).

## B. Procedural History

On July 15, 2008, plaintiff filed this action against defendants David Patterson; the State of New York; Sagamore; and Sanger, Ferrante and Dubey, in their individual and official capacities, alleging, *inter alia*, employment discrimination based on disability and/or age, retaliation and a hostile work environment in violation of the ADA, the Rehabilitation Act, the ADEA and the NYSHRL. On or about February 5, 2009, those defendants served plaintiff with a motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim, respectively, which was subsequently withdrawn. Thereafter, on October 7, 2009, plaintiff filed an amended complaint against Sanger, Ferrante and Dubey, in their individual capacity only, alleging, *inter alia*, employment discrimination based on disability in violation of the ADA (first cause of action), the Rehabilitation Act (second cause of action) and the NYSHRL (fifth cause of action); employment discrimination based on age in violation of the ADEA (third cause of action) and the NYSHRL (fourth cause of action); retaliation in violation of the NYSHRL (sixth cause of action) and the ADA (seventh cause of action); and violations of her equal protection rights pursuant to Section 1983 (eighth cause of action).

Defendants now move pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim, respectively. Plaintiff has not opposed the motions.

II.    DISCUSSION

A.    12(b)(1)

1.    Standard of Review

Where subject matter jurisdiction is lacking, "dismissal is mandatory." <u>Manway Const. Co., Inc. v. Housing Authority of City of Hartford</u> 711 F.2d 501, 503 (2d Cir. 1983). "In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." <u>IUE AFL-CIO Pension Fund v. Herrmann</u> 9 F.3d 1049, 1055 (2d Cir.1993) (quoting <u>Goldman v. Gallant Securities, Inc.</u>, 878 F.2d 71, 73 [2d Cir.1989]). In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. <u>Natural Resources Defense Council v. Johnson</u>, 461 F.3d 164, 171 (2d Cir. 2006). However, when deciding a jurisdictional motion, district courts may look beyond the allegations of the complaint and "examine evidence outside of the pleadings." <u>Hamm v. U.S.</u>, 483 F.3d 135, 137 (2d Cir. 2007). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. <u>Id.</u>

2.    ADA, Rehabilitation Act and ADEA Claims

Individuals may not be sued in their individual or personal capacity under the ADA, the Rehabilitation Act or the ADEA. See <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 79-80 (2d Cir. 2010) (anti-retaliation provision of ADA); <u>Darcy v. Lippman</u>, 356 Fed. Appx. 434, 436-437 (2d Cir. Oct. 22, 2009) (ADA, ADEA and Rehabilitation Act); <u>Garcia v. S.U.N.Y. Health Sciences</u>

Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (ADA and Rehabilitation Act); see also Cherry v. Toussaint, No. 02-7322, 50 Fed. Appx. 476, 81, (2d Cir. Nov. 1, 2002) (holding that the ADEA precludes individual liability). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's claims under the ADA and Rehabilitation Act is granted and those claims (first, second and seventh causes of action) are dismissed with prejudice. In addition, plaintiff's ADEA claim (third cause of action) is *sua sponte* dismissed with prejudice.

B.     12(b)(6)

1.     Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 2010 WL 1729107, at * 8 (2d Cir. 2010)(accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the

12

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, 604 F.3d 110, 2010 WL 1729107, at * 9.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

13

2.    Section 1983 Claim

Since plaintiff cannot maintain her claims under the ADA, Rehabilitation Act or the ADEA, her only remaining federal claim is her Section 1983 claim alleging a violation of her equal protection rights. Specifically, plaintiff alleges, *inter alia*, that she has been denied the opportunity to compete with other employees at Sagamore who "are routinely placed into positions without having to competitively bid for those positions in violation of New York State personnel regulations as well as the [CBA]," and then has been harassed by those same employees as a result of her complaints. (Compl., ¶ 103).

To state a claim under Section 1983, a complaint must contain factual allegations plausibly suggesting: (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005).

a.    Personal Involvement of Defendants

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004)(internal quotations and citation omitted); see Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (affirming the dismissal of the plaintiff's Section 1983 claim against defendant Coughlin on the basis that the plaintiff failed to allege his

14

personal involvement in any alleged constitutional deprivation); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989) (holding that when damages are sought in a Section 1983 action against a defendant in his or her individual capacity, the plaintiff must allege that the defendant was responsible for the alleged constitutional deprivation). "Personal involvement" may be established by evidence of direct participation by the supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003); see also Al-Jundi, 885 F.2d at 1066. "The fact that [a defendant] was in a high position of authority is an insufficient basis for the imposition of personal liability." Al-Jundi, 885 F.2d at 1065; see also Back, 365 F.3d at 127. A complaint based on a violation under Section 1983 that does not allege the personal involvement of a defendant fails a matter of law. See Rosa R. v. Connelly, 889 F.2d 435, 437 (2d Cir. 1989); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987); see also Johnson v. Barney, 360 Fed. Appx. 199, 2010 WL 93110, at * 1 (2d Cir. Jan. 12, 2010) (finding that the plaintiff's claims against the Superintendent failed as a matter of law because the plaintiff did not sufficiently allege his personal involvement in the alleged constitutional violation).

The only factual allegations in the complaint that are potentially relevant to plaintiff's Section 1983 claim are: (1) that unidentified person(s) filled the vacant "Secretary 1" position at Sagamore with an employee holding a "Keyboard Specialist 2" title, notwithstanding that

plaintiff informed non-party Hamilton that she was interested in that position, (Compl., ¶¶ 12,

14-17, 21); (2) that plaintiff was interviewed by non-party Schnall for a vacant "Keyboard 2"

position, but she subsequently declined that position because the previous employee who held

that position had a higher title than her, (Compl., ¶¶ 18-20); and (3) that non-party Milnes

informed plaintiff that another employee had been promoted by unidentified person(s) to a

position at the NYSOMH's Waverly office for which plaintiff had previously been canvassed,

(Compl., ¶ 54). Since plaintiff does not plead any factual allegations plausibly suggesting, *inter

alia*, that any of the individual defendants were personally involved, either directly or in a

supervisory capacity, in the placement of other employees into positions purportedly in violation

of New York State personnel regulations and the CBA or in the failure to place plaintiff in those

same positions, plaintiff's eighth cause of action in the amended complaint fails to a Section

1983 claim against defendants as a matter of law. See, e.g. Purdy v. Town of Greenburgh, 166

F.Supp.2d 850, 869 (S.D.N.Y. 2001), reconsideration granted in part on other grounds, 178

F.Supp.2d 439 (S.D.N.Y. 2002) (dismissing the plaintiff's Section 1983 claims against the

plaintiff's supervisor when that defendant was not involved in the decision not to recommend the

plaintiff for a specific employment position). Accordingly, the branch of defendants' motion

seeking dismissal of plaintiff's Section 1983 claim is granted and that claim (eighth cause of

action) is dismissed.


                    b.      Constitutional Violation

      In any event, the amended complaint otherwise fails to state a Section 1983 claim based


                                    16

upon a violation of plaintiff's equal protection rights.

### i.    Selective Enforcement Claim

The Equal Protection Clause requires that the government treat all similarly situated individuals alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Equal protection selective enforcement claims require two (2) essential elements: (1) that the plaintiff was treated differently than others similarly situated; and (2) that the selective treatment was motivated by some "impermissible consideration such as 'race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff].'" Kamholtz v. Yates County, 350 Fed. Appx. 589, 591 (2d Cir. Oct. 29, 2009) (quoting LaTrieste Restaurant and Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994)); see also D.F. ex rel. Finkle v. Board of Education of Syosset Central School District, 386 F.Supp.2d 119, 128 (E.D.N.Y. 2005), aff'd, 180 Fed. Appx. 232 (2d Cir. 2006); Dorcely v. Wyandanch Union Free School District, 665 F.Supp.2d 178, 194 (E.D.N.Y. 2009). Conclusory allegations of selective treatment are insufficient to state an equal protection claim. D.F. ex rel. Finkle, 386 F.Supp.2d at 128.

Although plaintiff alleges that she was "entitled to be treated the same as similarly situated employees," (Compl., ¶ 102), she does not allege any facts showing that she was similarly situated to any other employee or that defendants' purported selective treatment of her with respect to filling vacant positions for which she allegedly qualified was motivated by an impermissible consideration, i.e., an intent to discriminate against her on the basis of her

17

disability or age, to inhibit or punish her for the exercise of her constitutional rights, or with a malicious or bad faith intent to cause her injury. Liberally read, plaintiff's Section 1983 claim appears to allege that defendants' conduct in filling the vacant positions, thereby denying plaintiff a promotion to those same positions, was undertaken in retaliation for plaintiff's complaints of how her co-workers received their positions and harassed her. However, "[t]here is no recognized claim for retaliation under the Equal Protection Clause." Dorcely, 665 F.Supp.2d at 199, 201. Thus, plaintiff's conclusory allegations of selective treatment, which are not based upon her membership in any particular protected class, are insufficient to preclude dismissal. See, e.g. D.F. ex rel. Finkle, 386 F.Supp.2d at 128.

ii.    "Class-of-One" Claim

Since plaintiff does not allege a class-based selective enforcement claim, her Section 1983 claim can, thus, only be interpreted as to state a "class-of-one" equal protection claim, i.e., that defendants intentionally treated her differently from others similarly situated and that there was no rational basis for the differential treatment. However, the Supreme Court has limited the circumstances under which a "class-of-one" equal protection can be stated and explicitly held that such claims may not be asserted in the public employment context. Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 128 S.Ct. 2146, 2152, 170 L.Ed.2d 975 (2008); see also Conyers v. Rossides, 558 F.3d 137, 151 (2d Cir. 2009) (recognizing that the Supreme Court has explicitly disapproved of "class-of-one" equal protection claims in the public employment context).

18

Since plaintiff's claim is brought in the public employment context based on allegations that she was treated differently than other similarly situated employees in retaliation for her complaints of defendants' conduct, and not based upon her membership in any protected class, plaintiff cannot state a "class of one" equal protection claim as a matter of law. See, e.g. Massi v. Flynn, 353 Fed. Appx. 658, 660 (2d Cir. Nov. 24, 2009), cert. denied, ___ S.Ct. ___, 2010 WL 752361 (U.S. May 3, 2010) (holding that the plaintiff's "class-of-one" equal protection claim was barred by Engquist because the plaintiff claimed only that he was treated differently from other similarly situated employees for malicious reasons, not on the basis of his membership in any particular class); Conyers, 558 F.3d at 152 (affirming dismissal of the plaintiff's equal protection claims because it did not arise out of the plaintiff's membership in any particular group and, thus, fell under Engquist's holding that a "class-of-one" equal protection claim does not apply in the public employment context); Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008) (reversing an order granting a preliminary injunction in favor of the plaintiff, a tenured professor, on her "class of one" equal protection claim alleging that she was suspended without pay for refusing to undergo a psychiatric examination in light of Engquist's holding that the Equal Protection Clause does not apply to a public employee asserting a "class-of-one" claim). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 equal protection claim (eighth cause of action) is granted and that claim is dismissed.

c.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given

leave to amend "when justice so requires." Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Since plaintiff has already amended her complaint once, has failed to oppose defendants' motions to dismiss or to request leave to again amend her complaint to correct the pleading deficiencies in her Section 1983 claim, and has otherwise been dilatory in her prosecution of this action, I decline to grant plaintiff leave to amend her complaint to re-plead her Section 1983 claim against defendants to assert a viable selective enforcement equal protection claim. Accordingly, plaintiff's Section 1983 claim is dismissed with prejudice.

C.    Supplemental Jurisdiction

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, see Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 391-92, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 388 (2d Cir. 2000), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). See Carlsbad Technology, Inc. v. HIF Bio, Inc., 129 S.Ct. 1862, 1866-1867, 173 L.Ed.2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing

20

every claim over which it had original jurisdiction is purely discretionary). The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent state law claims. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); see also Kolari v. New York-Presbyterian Hospital, 455 F.3d 118, 122 (2d Cir. 2006). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7, 108 S.Ct. 614; New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 118-119 (2d Cir. 2007); Kolari, 455 F.3d at 122.

In light of the dismissal of all federal claims in this action at the pleadings stage, and upon consideration of all relevant factors , i.e., judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over plaintiff's remaining pendent state law claims. Accordingly, plaintiff's NYSHRL claims (fourth, fifth and sixth causes of action) are dismissed pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff is advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for her state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of **thirty (30) days after the date of this order**, unless a longer tolling period is otherwise provided under state law.

III.   Conclusion

For the reasons stated herein, defendants' motion to dismiss the amended complaint is

21

granted and the amended complaint is dismissed in its entirety. The Clerk of the Court is directed to enter judgment in favor of defendants and to close this case.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 9, 2010
        Central Islip, N.Y.